Thank you, Your Honor, and may it please the Court, John Sauer on behalf of the State Judge Appellants in this particular case. Your Honors, in this case, the District Court should have abstained under the Younger Doctrine because the injunction at issue and the relief sought by the plaintiffs constitutes a quintessential continuing intrusion into the daily conduct of state criminal proceedings that lies at the core, the heartland, of what the Younger Doctrine is concerned with. Now, the plaintiffs or the appellees in this case have raised two arguments to contend that the Younger Doctrine should not apply, but neither of those arguments is persuasive. First, they argue that Younger doesn't apply because this doesn't fall within one of the three Sprint Against Jacobs categories. The real problem with that is that it's hard to get that argument even off the starting blocks because in O'Shea v. Middleton, the Supreme Court did abstain under Younger from a claim that's virtually identical to the claim that's being raised here with respect to bond proceedings. The first of the three issues in O'Shea was, quote, you know, that the Cairo, Illinois judges, quote, set bond in criminal cases with unofficial bond schedules without engaging in individualized consideration. The Supreme Court abstained under Younger from that particular claim and held in that particular case that that would require the, quote, ongoing audit of state court criminal proceedings that Younger prohibits. So it's squarely that the argument that this does not fall within one of the Sprint Against Jacobs categories has to rely on an argument that Sprint Against Jacobs impliedly overruled O'Shea, when actually if you read the Sprint opinion, the Sprint opinion is consistently saying, here's what we've already held and all of our holdings are reaffirmed. We're just not going to extend Younger any further. What about, what about the Ninth Circuit case? Are Verrill, if I'm pronouncing it correctly, they specifically declined to abstain in that case over a bond issue? I agree, Your Honor. It's Aravello, I say it, and I think the same holding is present in the other cases that rely on O'Donnell and Walker. All three of those cases relied on footnote nine in the Gerstein opinion to conclude that because it's sort of a collateral proceeding within a criminal proceeding, an injunction wouldn't result in an injunction against the final criminal trial. It doesn't fall within Younger. The problem for that argument here is that the Supreme Court and this Court have both expressly rejected that particular interpretation of footnote nine in Younger. So Moore against Sims said just a couple years after Gerstein what that footnote, cited footnote nine in Gerstein and said the teaching of Gerstein is that the federal plaintiff must have the opportunity to press the claims in state court. So that footnote is about having an adequate opportunity to raise the federal claims in state court. It is not about exempting sort of proceedings within criminal proceedings from the holding of Younger. Again, in the Giudice case, the Supreme Court said something similar and most recently, last year, this Court adopted that very proceeding in the Oglala opinion that we've cited. So again, what if there was no effective remedy in state court? Would we still have to abstain? That would be one of the three middle sex factors and that would weigh against abstention. But here, there's abundant authority that there is an effective remedy in state court because so I thought that was what the essence of the district court decision though was that there was not an effective way to get relief, at least prior to the change in the rules. We're talking about pre-July 1st status. There may be a theoretical avenue of relief, but as a practical matter, you really couldn't get any relief. That was what the district court stated. I think that is clearly unsupportable under most obviously this Court's holding in Oglala because we cited to the district court and to this court a Missouri, 2012 Missouri Supreme Court decision where under rule 33.09, the extraordinary risks in this particular case, constitutional issues regarding bond were raised both to the Intermediate Court of Appeals and to the Missouri Supreme Court and within six months of indictment, there was a complete adjudication on the merits, a final adjudication on the merits of those particular cases and that state against Jackson case from 2012, the defendant was indicted on April 27th and on October 30th of the same year, the Missouri Supreme Court issued a binding statewide precedent, precedent, a precedent that's binding statewide, and in the process of that, there were two separate writ proceedings in the Missouri Courts of Appeals. So this Jackson case clearly shows that there is an available state court remedy here to address the vital points. Okay. I think all that shows, you could make the argument that all that shows, though, is that there is a theoretical way of doing it, but I think what the district court was In practice, we got hundreds, if not thousands, of people who are sitting in jail without bond hearings and it's not a practical remedy. I'd say two things in response to that. The first is the district court got the legal standard wrong because the Supreme Court said both in Moore v. Sims and in Pennzoil that the adequacy, the availability is a question of law, not a question of practical ability. So the way Moore v. Sims put it is that state law has to clearly bar raising federal claims in order for the state court opportunity to be adequate. Similarly, in Pennzoil, it said there has to be unambiguous authority to the contrary before federal courts will presume that you can't raise federal claims in a collateral proceeding. But I'd also make the practical point, practical considerations are not determinative, but I'd also make the practical point here that on the very day that these particular plaintiffs pursued, filed a federal class action represented by a large number of attorneys, those same plaintiffs could have and should have pursued writ relief under 33.09 where they could have raised exactly the same claims and had a much speedier adjudication than is available in federal court. So for both of those reasons, I'd suggest that the district courts, I think that you're right that that's what the district court said, but I think it is not persuasive in that particular case. And for those reasons, this court, the case for younger abstention in this case is extremely strong and compelling, I would say, especially under, more against Sims, under Giudice and Oglala. But there's an additional jurisdictional hurdle that was faced here that is also completely bars the sort of federal relief that they sought. Because they had a jurisdictional problem from the outset because the plain text of Section 1983 says you cannot pursue injunctive relief against state judges. And the procedural remedy that they want is in your procedures differently. But Section 1983 says, quote, as to judicial officers, injunctive relief shall not be granted. So what they did is they sought an end run around that by seeking an injunction against their warden, ordering the warden to release them unless the state judges did something different. But that worked to the warden's risk. Keep in mind the warden here is quite different from the warden in Wilkinson v. Dotson, who was the person who actually performed the procedures, but they were seeking to be done differently. This warden's sole authority is either to detain them or release them. And so they said, well, we can't get an order, a direct order, ordering procedures to be done differently. So we're getting a sense like hold the judge's feet to the fire by seeking what is quintessential habeas remedy, an order of release against the warden, and use the threat of that remedy to try and pressure the judges to do the bond hearings differently. That's essentially is exactly what's happened here. I think they admit that they know they were barred by the jurisdictional hurdle in Section 1983, and so they sought this creative end run around it. The problem is, facing that one jurisdictional hurdle, they bump into the other jurisdictional hurdle, which is that if this remedy, this order to the warden to release them is available in habeas, it is ipso facto not available under Section 1983. Because the Supreme Court held in Pizer v. Rodriguez, Hill v. McDonough, a number of circuit courts have held this, that these are mutually exclusive remedies. If it's available under habeas, it is not available under Section 1983. And we know that this relief is available in habeas because the Supreme Court said that in Stack v. Boyle about bond proceedings. And I believe in that case, they actually ended up, they said, look, Federal prisoners should first seek a bond reduction and do appellate review, which is exactly what we think they should do with the equivalent State court procedures. But barring that, Stack v. Boyle says habeas is the appropriate remedy for one held in a bond proceeding. Would you remind me, counsel, and my memory is failing me here, was this issue at issue in the Fifth and Eleventh Circuit opinions that are cited in the papers? I believe it is. I believe it's raised in O'Donnell. I'm not sure about Walker's, the Fifth Circuit opinion. At least one of those opinions, I think, that this argument was considered and rejected. And we think that that's not persuasive on that particular point. But I also think that I'm not sure that the argument was articulated the way that we're articulating it here, because the Court has to keep in mind that what's going on here is a creative end run around a jurisdictional hurdle that collides just directly with another jurisdictional hurdle. So the Court ought to consider that particular circumstance and realize, look, this is a remedy that's exclusively reserved for habeas. Turning briefly to the merits, the Court should not reach the merits because abstention is warranted under Younger. It's an extremely strong case for abstention under Younger. In addition to that, there is this jurisdictional problem with habeas being the exclusive remedy. But very briefly, if the Court reaches the merits, the Court should conclude that heightened scrutiny does not apply in this particular context, because the detention here is not, quote, solely because of indigency. The dominant, in fact, perhaps the sole purpose of these pretrial release orders is to ensure that the defendant appears for the subsequent criminal proceedings. So this is critically different than the cases, the sort of Bearden Trio or Bearden Trilogy that they rely heavily on, because in those cases, there was a prior determination that incarceration was not necessary to serve the State's interests. These people were already released, and their sentences didn't involve imprisonment until they couldn't pay. Here, you have a completely different purpose for these particular orders. It's completely different, which is to ensure that there's the future appearance of these particular defendants for their criminal proceedings. So regardless of the merits arguments, the notion that the detention is solely because of indigency is insupportable. I see my time has expired. I reserve the rest of my time for rebuttal unless there are additional questions. Any questions? No. Thank you. Thank you. Mr. Gerker. Good morning, Your Honor. May it please the Court. Judge Kovas, I'd like to respond to the question you asked Mr. Sauer, which, if I understood it correctly, was whether the Prisor issue was addressed in Walker and in O'Donnell, and it was not. In the one case, the Court of Appeals said that the city or county had waived the issue by not raising it in a timely fashion, and in the other, it's not even mentioned. And I think it's important, and I apologize to the Court, my research skills may not be up to snuff like I used to think they were, and I overlooked a subsequent sequel in O'Donnell, O'Donnell v. Goodhart, 900 Fed Third 220, in which the district court on remand entered a conditional release order directing that prisoners would be released if a bond hearing an individualized bond hearing was not held within 48 hours. And the Fifth Circuit stayed that and said that it did not conform to the mandate in O'Donnell. And I think in that case, the Prisor was raised, the Court did not address it because they felt they didn't need to since the district court had exceeded the mandate on remand. But I think it's important to emphasize that this is an end run around both the plain language of 1983 and the holding in Prisor. But I would like to emphasize that my clients, or the jailers, caught in the crossfire here. And, you know, I think I should, Mr. Durker, would you be so kind as to file a 28-J letter? I'll be happy to do that, Your Honor. Well, let me ask you a question, Mr. Durker. I was going to ask Mr. Sauer this, but he was into his rebuttal time, so I'll ask you. You saved it. What's the effect on this case of the Supreme Court order changing the bond review procedure as of July 1st? Well, Your Honor, that was exactly, you read my mind. This case is moot. I guess that's the question I'm asking. Is this case essentially moot? It is, Your Honor. The new Rule 3301 compels the circuit court to conduct the kind of reviews that the plaintiffs and the district court feel were constitutionally required. Was there a finding that the original procedures were unconstitutional as written? No. I mean, isn't the argument that they simply were not being followed? That that is the essence of the claim. And isn't that claim still alive because the argument could be made that the new procedures are not being followed? Well, I think the problem with that is that that, to me, walks us right back into the abstention problem because then it calls for a constant monitoring of the operations of the 22nd Circuit. And I think that whether that's warranted or not is really not my brief. My brief is don't put the city and the Commissioner of Corrections in the position of a review, a court of review of the operations of the 22nd Circuit. Are there any allegations of direct unconstitutional conduct by your clients? No, Your Honor. Other than we are tarred with the brush of the allegedly unconstitutional behavior of the court, the 22nd Circuit, in issuing what the plaintiffs deem to be and the district court deem to be unconstitutional warrants and detention orders. Well, there is the allegation that your clients, as the jailers, were told the prisoners not to say anything at the hearing. Well, Your Honor, there is a claim against the sheriff. And the sheriff is not part of this appeal because the sheriff and the plaintiffs had an understanding that nothing would be said at first appearance to prisoners unless otherwise directed by the judge presiding over the bond review hearing. So the sheriff is not appealed because there's no relief ordered against the sheriff. There is that allegation. But I submit that that is also moot because the new rule mandates that the circuit court conduct the kind of individualized inquiry that everybody agrees is necessary. Have all the prisoners who were detained prior to July 1 now have had a bond review hearing? I don't know for sure, Your Honor. Are there any that would still be pre-July 1 prisoners that we would have to be concerned about? I can't say positively that there are none, but it's my understanding that of the current population in the facilities, virtually everyone would have had a hearing by now. And this is another thing that came up below, which was that many prisoners who were pre-July 1 had had bond reviews on motion. So there was a universe of prisoners who had had counsel raise the bond setting, and there had been a hearing. And that was conducted under Rule 3306. But I think the idea that the district court should continue to monitor the practices of the 22nd Circuit, I think it's very telling in Judge Fleissig's order denying the stay that she says in so many words that she's helping the 22nd Circuit obey the new Missouri Supreme Court rule. I respectfully submit that that's not the appropriate role for the district court in this kind of situation. But I have to emphasize that I think that as far as my clients are concerned, you know, we don't want to release dangerous people. We don't want to be superintending the 22nd Circuit. We do want to conform to the Constitution. And we submit that if this case remains alive, which we don't think it should, we submit that the relief should be tailored so that at most we would be required to report monetary conditions of bail to the district court. And we think, though, that habeas is the proper way to address this. And I think that's what Aravello holds, that was a habeas case, and that was the right way to go about this in our view. And I think Pugh v. Rainwater, the case on remand from Gerstein with the adoption of new Florida rules said this case is moot. And that's why we go back to where I started, that this case is moot. And we submit that the 22nd Circuit can be depended upon to comply with the Missouri Supreme Court rules, which were adopted and are very explicit. They made explicit what was only implicit in the previous rule. And my time has expired, but my opponent threw my own words in the district court back at me about bond settings that I personally was involved in. But since my time is up, I won't trespass on your patience. Thank you. I ask for reversal and vacating. Thank you. Mr. Garg. Good morning, Your Honor. May it please the Court. My name is R.P. Garg. I represent the plaintiff's appellees. The district court correctly found systemic constitutional violations in St. Louis' bail practices, where thousands of arrestees are incarcerated for weeks upon weeks just because they are poor. And crucially, without any judicial determination, that that incarceration serves the government's crucial interests of appearance at trial or public safety. The district court also crafted a narrowly tailored injunction applying only to Commissioner Glass. And finally, it was judicious. It recognized the comedy and abstention concerns raised by the defendants. But it ruled that those state court remedies were not adequate. How is the injunction narrowly tailored if it's against basically the only person who's not accused of a constitutional violation here? Two points on that, Your Honor. If this were a final judgment, we would be entitled to a declaratory judgment against the judges. The plain text of 1983 allows declaratory relief against judges. And the judges themselves admit that a declaratory judgment, that their procedures were unconstitutional, is permissible under PRISER. The problem is there's no such thing as a preliminary declaration. One of the cases the city cites, the Doran v. Salem Inn case, says that. So the district court did the next best thing. Well, isn't the next best thing to expedite the case and get to, as opposed to issuing an injunction against someone who really, you know, has no power to change the procedures that are at the root of your lawsuit and is potentially in the situation of either being held in contempt by the state court judges for denying an order or by the federal judge for violating the injunction? Well, let me make a few points on that, Your Honor. First, I understand the intuition. It feels improper to enforce a constitutional order against someone who did nothing wrong. But in ex parte Young doctrine, that is, in fact, exceedingly common. And I'll point the court to the Ninth Circuit's decision in Moore v. Urquhart, where, similarly, a sheriff was enjoined for enforcing tenant conviction orders. The sheriff had no personal responsibility. They were just enforcing tenant conviction orders. The constitutional claim was that the tenant proceedings were unconstitutional. And there, the Ninth Circuit held, under the plain text of 1983, it is permissible to enjoin the sheriff for this conduct. And that draws off of the basic intuition of ex parte Young. For well over a century, the Supreme Court has said that one way to prevent unconstitutional conduct, if you can't sue, so in the context of ex parte Young, you can't sue the state because of 11th Amendment immunity. So instead, you sue the state official. Many times, the law is unconstitutional. The state official didn't do anything. They had to enforce the law. But they are enjoined all the time. And so that is, I think, the intuitive answer. Essentially, what you're doing is obtaining an injunction to prevent the judges from doing what you think is unconstitutional. It is the next best thing. It's not an injunction. I would say it's more equivalent to a declaratory judgment, which you are allowed to get against judges. But as I said, there's no such thing as a preliminary declaration. One more point. You asked about whether this It's a practical effect of this, though. Just as Judge Kolb has described, it's an order directed at someone who committed no constitutional violation in an attempt to compel state judges to act in a certain way. Yes, it is the effect of the order. That is permitted under the case law. So there's two doctrinal places where this argument can go. One is an argument that, oh, this is impermissible under 1983. But the text of 1983 doesn't exclude this type of order. It says any person under color of state law who, quote, causes a constitutional violation is liable under the text of 1983. And that's why I direct the Court to the Ninth Circuit decision in Moore v. Urquhart, where it explains that there's no concept by which that text extends to an executive official. Another sort of doctrinal path that the defendants take is they try to put this under the prizer doctrine. And that's why I was making the point to you, Your Honor, that if this were final judgment and we had a declaratory judgment against the judges, that they admit that's a totally permissible prizer case. And so when you think about it from that perspective, it's not like this case is suddenly a habeas case at the preliminary injunction stage, but it would be a 1983 case at final judgment. It's the same case. It's the same constitutional theory. The core of our constitutional theory is that they are entitled to simply a new bail hearing. And in Wilkinson v. Dotson, which synthesized the prizer doctrine, it said the test for when something has to be 1983 v. habeas is, quote, whether it would necessarily spell speedier release. That's the test for 1983. And here, no member of the plaintiff class is entitled to release. They are simply entitled to a bail hearing. So in Dotson, he wanted a parole hearing. And the Court there said, maybe he'll get parole, maybe he won't. We don't know. And that's why a claim for a parole hearing doesn't violate prizer. So I understand where the Court is coming from, but if you think about it as a doctrinal matter, it doesn't fall under 1983. No problem under prizer. No problem under the text of 1983. And as to the intuition, which I hear, that has actually, in fact, been true for a hundred years of Ex parte Young doctrine, that, in fact, you do frequently enjoin the enforcer who has no discretion whatsoever because that's required. And here, it was required for the reasons I say, that there is no such thing as a preliminary declaration. And so for that reason, the district judge – that's why I called it a narrowly at this stage, they said the jailer is responsible. One other point on that, the Fifth Circuit, in its O'Donnell decision, called for very similar relief. So at the very end of the O'Donnell opinion, the Fifth Circuit offers what it calls a model injunction. It says, this looks like something we think would comply with the Constitution. In that model injunction, it has the same type of situation, that if the requisite requirements of the Constitution are not enforced, the sheriff is authorized to not enforce jail orders. And so that same structure that is at issue in this injunction was actually recommended by the Fifth Circuit as a way to accomplish remedying these constitutional violations. So if there are no more questions on that, I'd like to turn to Younger abstention, which is one of the judges' principal focus. Well, I want to – I'd like you to address the rule change. Yes. I mean, as I understand it, you have obtained basically all the relief that you're asking for. So why does that not either make the case moot or advocate for abstention and let the State Court enforce the new rule? So the answer is, I think, what Judge Kobes said. Our challenge here is to the state judge practices. And the mootness question then is, is it absolutely clear that the state judge's bail practices conform with the Constitution? And our argument is twofold as to why the passage of the new rules doesn't do that. One, the district court found, quote, systemic noncompliance with the old rules. That's footnote 10 of the district court opinion. And so I should step back here. The burden on mootness lies on the defendants. And the Supreme Court has said that in these kinds of cases where you have an intervening event, voluntary cessation, they have to prove that it is, quote, absolutely clear that the challenge conduct will not continue. And so, one, the systemic noncompliance with the old rules goes to that question. If they weren't following the old rules, we can't say that it is absolutely clear that they will follow the new rules. The second data point is their vigorous defense of their old practices. In the Supreme Court, in both the Knox versus SEIU case and the parents involved case, it said that when a party shows up and says, our old practices were totally fine, that is a further reason to at least say that it's not absolutely clear that the conduct won't recur. But I do think there's a practical point that Your Honor is getting at, which is, if the judges are following the new rules, what's going on here? If the judges are following the new rules, they are absolutely free to make that showing before the district court. Our argument here is that the issuance of the new rules by the Missouri Supreme Court is not sufficient to meet the very high bar for mootness on appeal. But if the judges aren't following the new rules, they are free to go before the in light of representations and issues raised by the defendants. And changed circumstances are always the basis for modifying or vacating an injunction. An injunction is equitable, and one aspect of equity is that if the circumstances have changed. Well, I guess I understand your argument about continuing to defend the allegedly unconstitutional practice. But it seems to me that as far as the new rule is concerned, you're implicitly acknowledging that the new rule will get you what you're looking for. It probably actually gives you more than what the injunction provided for. So then it seems to me that what you have to argue is that the Missouri Supreme Court, as a supervisory agency over the local courts, is not going to enforce their own rule. And I'm not sure I'm willing to go that far. It's not. I mean, part of this is the doctrinal framework that we're in. Because it's mootness on appeal and the practices that we challenge, the burden falls on them to prove that it is absolutely clear that they will conform with the practices. So what should we do? I think you should affirm the preliminary injunction, but you can direct the district court to consider, because it's just a preliminary injunction. There will still be further proceedings. And the district court can consider whether, if in fact the judges are in complying with the new rules and can make that showing, that would be an equitable basis for to consider in the issuance of a permanent injunction. But at this stage, this is a preliminary injunction on appeal. The only evidence in the record is that they were, quote, engaged in systemic noncompliance with the old rules. And we recognize the Missouri Supreme Court has issued new rules, but where the didn't follow the old rules, we just don't think it's absolutely clear here. And that is the standard for mootness on appeal. And I will just note on that point, the Supreme Court's decision in Friends of the Earth v. Laidlaw explains that mootness on appeal is different than other justiciability concerns. A lot of resources have already been expended in the case at that point, and that is why the Supreme Court creates such a high burden for mootness on appeal, that we should let this case resolve itself unless it is absolutely clear that the challenge conduct will not continue. Just one more point on mootness. Well, let me just say this. Is there any relevance to the fact that the new rule had been promulgated at the time the injunction was issued? And should that have factored into whether the injunction should issue at all? Should the district court have given the state court a chance to clean up their acts, so to speak? If you look at the transcript, John, the district judge did ask about this. And she said at one point, there's this new rule coming down the pipe. Have you done anything to change your practices? Are you ready for this? And the short version is they said, no, we haven't actually figured it out yet. And so part of, I think, what the district judge was motivated by was that she couldn't have the confidence that, oh, in a few weeks or in a few months, they were ready to implement the new rule. She asked about these very questions. She said when they were having issues with the implementation of the preliminary injunction, she said, I don't understand. Wouldn't you have already put procedures in place because of the new rules? And they said, no, we don't actually have those procedures. So to your point, I think the district judge did think about those things and thought about those, but ultimately decided that a preliminary injunction was warranted for the basic reason that there were thousands of individuals who were being detained in violation of their constitutional rights. And she felt that it was essential in light of the human cost of that, the irreparable harms, that a preliminary injunction be entered. And that's why it should be affirmed for this reason and let the judges meet their agreement of showing that their practices now conform with the new rules. Just one more point on mootness, Your Honor. If the court is interested in mootness, we are happy to submit a supplemental affidavit. And, of course, the other side can also, with respect to the degree to which the judges are following the new rules, we have court watchers, we have individuals who can say that they are not, in fact, conforming to the new rules. So if the court is interested in mootness, we are happy to submit an affidavit along those lines. Also, as I say, as a doctrinal matter, given the incredibly high standard that they have to meet, we don't think it's met here. On that note, I'd like to turn to abstention because it is the judge's principal argument. Judge Malloy, you recognize that the other courts of appeals have agreed with us that pretrial collateral proceedings are not subject to younger abstention. That is in Gerstein itself, and that is what the Fifth, Ninth, and Eleventh circuits have all held. Specifically, the Ninth and the Eleventh expressly relied on Gerstein in reaching that conclusion. Our case, though, didn't really go that direction. Is that fair to say? I mean, the suggestion there, I think, is quite different than the Fifth and Eleventh circuits. Of course, Oglala was not a bail case, but I do think that's different for an important reason. So the language on which we rely in Gerstein, which talks about whether or not the order would prejudice the conduct of the trial and the merits, that wasn't at issue in Oglala. Oglala was a child custody proceeding. And the Supreme Court had held in Moore v. Sims 40 years ago that child custody proceedings are subject to younger abstention. But we basically, in Oglala, said that Gerstein was more about the availability of a State remedy. And I'm not disagreeing that Gerstein says that also. So our reading of Gerstein is that it says two things. It says that younger abstention doesn't apply if either of two requirements are met. One, there is an adequate opportunity, or two, it would not prejudice the conduct of the trial on the merits. And so our lead argument, as we've talked about and other circuits have accepted, is that just like probable cause hearings don't prejudice the conduct of the trial and the merits, the same is true of bail. Of course, that argument, the one I just articulated, was not made in Oglala. It was a civil proceeding. And in fact, the Supreme Court had already said in Moore v. Sims that the child custody proceedings are subject to younger abstention. So the judges want, are urging this Court to reject a reading of Oglala that was never argued in Oglala because it simply wouldn't have been pertinent. The language in Gerstein that is relevant is, we agree, the alternate holding of Gerstein where it says adequate opportunity. And I want to return to your point, Judge Malloy, on why the opportunities here are not adequate. But did you have a question? Well, I was going to say, Mr. Sauer in his argument said that O'Shea was directly on point, that that was a bond case, was a U.S. Supreme Court decision. And Justice White there said that we should abstain in these types of proceedings. Why is O'Shea not controlling? So in O'Shea, there were three types of challenges at issue. There was a bail challenge, but there was also a challenge to jury fees, which is squarely part of the criminal prosecution. It's juroring the criminal prosecution. And there was also a challenge to sentencing, which was also part of the criminal prosecution. And if you read the briefs and listen to the argument, there was no distinction drawn between any of those three things. I mean, the O'Shea litigation, and you see this at the beginning of the opinion, was really a challenge to the entire administration of criminal justice in Cairo, Illinois. And so the Court didn't parse, oh, this part of the proceeding is actually pretrial. It was all just treated as one, and O'Shea went on to reach its holding about intrusive sort of injunctions. But there was no distinction actually drawn to say that, oh, the bail challenge is specifically covered here. So we just don't think O'Shea, and for the reasons we say, O'Shea hasn't been read that way by the Fifth Circuit, the Ninth Circuit, or the Eleventh Circuit. So it's a lot to hang on to something that was not argued, not addressed, not actually in the opinion itself. The other point that Mr. Sauer makes about – so the other big point on abstention is the adequacy of the alternatives. And the district court found that it was – they weren't inadequate partly because they were untimely. And so the district court specifically found, and these findings are in the record, that the judges instruct individuals that if they want to change their bail conditions, they need to have a lawyer. And that finding is at page 28 of the district court opinion, and it's also supported by the evidence in the record. So the Forrester Declaration, she went – she was a court watcher, and when she watched, she said, quote, when an incarcerated person asked about the bond, the judge would, quote, state that the attorney could file sort of a bond reduction. In one instance, an arrestee asked questions, and the judge told him, quote, that's for your attorney. I'm not going to do the job for them. Mary Fox, who's a public defender, said, quote, in the vast majority of the cases, the judicial officers told confined defendants who inquired about a reduction in their bond that the judge will only discuss that with their attorney. And that's relevant because the facts in the record also establish that it takes about a month to get an attorney in the St. Louis bail system. And then it takes at least, you know, another period of time to brief a writ of mandamus. So based on the facts in the record, it takes something like 30 to 40 days to actually get the writ of mandamus process going. And in Gerstein, which, again, is the case on which we rely, the beginning of the opinion notes that there are theoretical other alternatives for someone who is challenging a probable cause hearing. They could have filed habeas. They could have brought a special probable cause hearing in 30 days. They could have gotten harraignment. But the Supreme Court said none of that was adequate. The habeas point was not practically available to the point, Judge Malloy, that you've made. And the other two simply took too long. We're talking about pretrial detention. Pretrial detention, if you have to wait 30 days, the harm is irreparable. And the same is true here. The writ of mandamus, the bond modification procedures, these take 30, 40 days based on the record. And that is untimely. And for the contrast, the day that the plaintiffs filed their complaint in federal court, they filed the TRO. And even though TRO didn't end up being granted, defendants basically gave what the TRO asked for. They gave the relief. So in federal court, they got essentially immediate relief, whereas the state court remedies would have taken 30, 40 days. And that argument was not at issue in Oglala. In Oglala, the mandamus question, there's no dispute as to whether it was timely or not. It wasn't raised. So our argument here is that the writ of mandamus maybe generically may qualify, but the question is whether it is timely here. And given the nature of pretrial detention, given the nature of the irreparable harms at stake, whereas the amici point out that after a number of days, people start losing housing. They lose access to their children. They start to have mental and physical effects. Those harms would not be remedied if you had to wait 30, 40 days as you would under the state court remedies. So on the younger issues, there are two independent grounds. There is the Gerstein ground, which says this is a pretrial collateral proceeding. But even under the judge's argument, where it turns on adequacy, the findings and evidence established that the proceeding on which they rely, mandamus, would not be timely or adequate in this case. One more point. As to your first issue, though, even if it's a 1983, that doesn't mean we shouldn't abstain, does it? No. The younger abstention is typically thought about in 1983 cases. So this is distinct from the question of 1983. Is this your point, then, that because it's pretrial that younger shouldn't apply? Yes. That is our reading of the Gerstein footnote, as the other courts of appeals have held. Unless there are further questions, we ask that the district court's preliminary injunction be affirmed. Thank you. Mr. Sauer, when you're ready. Thank you, Your Honor. Just a few points. I want to start by saying I was incorrect, and my colleague, former Judge Durker, was correct in saying that Walker did not address the habeas argument. And O'Donnell held a footnote 3 that had been waived. So it never addressed the merits. This would be the first court of appeals to address the merits of that particular argument. I think the counterargument that was made relying on Ex parte Young fails to appreciate the distinction here, which is that the relief is being sought as an injunction against the warden ordering him to release these people. So this issue of colliding with a different jurisdictional problem, the exclusive habeas remedy, is not present in those other Ex parte Young cases. Regarding the new rules, regardless of whether or not this case is technically moot on appeal, the pendency of the new rules, which were announced in December before this case was ever filed to become effective six months later, strongly undercut for equitable reasons, as you suggested. Equitable reasons, the use of equity here to order, effectively indirectly order State judges to change their perspective. Well, was Mr. Clark correctly that when you were asked if you'd just comply with the new rules, you said, well, we're not prepared to do that? I know what I said, which is I said I do not know the answer to that question. If you look at the record, I know I said that in that particular proceeding. I don't recall. I'm sorry. Slow down just a bit. You know you said what? I do not know the answer to the question. This was a status conference. There was no evidence of this. The status conference was held on very short notice. I had been dealing with another case. I came there, and Judge Fleissig asked, well, what are you doing to establish the rules? I said, Judge, I am not prepared to answer that question because I haven't had any conversations with my clients about it. So I'm quite confident I never said, oh, they're not doing anything to establish the new rules. And what the law says, and what this Court said very clearly last year in the Hawley opinion, is that it is a very strong presumption that they are going to comply with the new rules. That presumption was ignored, both as a district court's factual findings as to the old rules and then the presumption that they're not going to comply with the new rules. When there was a similar failure by the district court to presume that state officials are going to comply with the law, what this Court said in Comprehensive Health against Hawley is our starting point is, quote, the polar opposite. Our starting point is to presume that state officials, especially state judges, are going to comply with the law. So that presumption should have been, where there's no evidence at all before the district court as to what's going to be done to comply with the new rules, the would comply with the new rules. And that completely undercuts the case for this extraordinary use of equitable remedy here. I mean, the fact that this injunction was entered three weeks before the new rules got into effect, when during the entire pendency of the Federal proceedings everyone knew, because the Missouri Supreme Court had announced the rules in December of 2018 that they were about to go into effect, to have an injunction three weeks before and effectively ordering them to do what the new rules required anyway undercuts all the equitable arguments that are made in this particular case. I see my time has almost expired. If there are any questions, I'd be happy to respond. Thank you, Your Honor. Thank you very much. The Court will take the matter under advisement. The issues were very well briefed and argued. Thank you.